UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

ROBERT PRICE,

        Petitioner,              Case No. 2:24-cv-38

v.                                         Honorable Paul L. Maloney

JAMES CORRIGAN,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a former state prisoner under 28 U.S.C. § 2254. When he initiated this action, Petitioner Robert Price was incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. On July 25, 2019, Petitioner pleaded guilty in the Montcalm County Circuit Court to operating a motor vehicle under the influence of intoxicating liquors—third offense, in violation of Mich. Comp. Laws § 257.625. On October 17, 2019, the trial court sentenced Petitioner to five months' incarceration, with credit for 106 days served, and three years of probation.

At a probation violation hearing held on February 20, 2020, the trial court found Petitioner guilty of violating his probation. The trial court revoked Petitioner's probation and sentenced Petitioner to 14 months to 5 years of incarceration, with credit for 256 days of time served.

On March 11, 2024, Petitioner filed his habeas corpus petition raising the following three grounds for relief:

    I.      MCR 6.429 motion to correct clerical [and] substantial error and MCR 6.435 motion to correct an invalid sentence.

  II.  6th Amendment of ineffective assistance of counsel.

  III.  14th Amendment of due process.

(Pet., ECF No. 1, PageID.5–8.) After Respondent filed a response and the state court record (ECF Nos. 13, 14), the Court entered an order (ECF No. 15) noting that Petitioner was no longer in custody on the probation violation sentence and had been discharged from custody. The Court, therefore, directed the parties to file briefs within 14 days addressing the collateral consequences, if any, Petitioner continues to suffer as a result of the revocation of his probation. The parties filed their briefs on November 16, 2024. (ECF Nos. 17, 18.) Upon consideration of the record, the Court concludes that Petitioner has failed to demonstrate that he is suffering any collateral consequences. Accordingly, the Court will deny his § 2254 petition as moot.

## Discussion

### I. Factual Allegations

  On July 25, 2019, Petitioner pleaded guilty in the Montcalm County Circuit Court to operating a motor vehicle under the influence of intoxicating liquors—third offense, in violation of Mich. Comp. Laws § 257.625. (ECF No. 14-2.) On October 17, 2019, the trial court sentenced Petitioner to five months' incarceration, with credit for 106 days served, and three years of probation. (ECF No. 14-4.)

  On December 4, 2019, the trial court issued a summons for Petitioner to appear to answer to charges that he had violated his probation. (ECF No. 1-1, PageID.583.) The trial court held a hearing with respect to the probation violations on February 20, 2020. (ECF No. 14-8.) At that time, Petitioner's probation officer, Brett Joslin, testified. (*Id.*, PageID.660–661.) Ms. Joslin testified that she had directed Petitioner to report to her on the day he was released from the Muskegon County Jail. (*Id.*, PageID.662.) Ms. Joslin testified that even though Petitioner was

released on December 2, 2019, he did not report until December 3, 2019. (*Id.*) Petitioner did not contact Ms. Joslin on December 2, 2019, to explain his whereabouts. (*Id.*, PageID.664.)

When Petitioner reported on December 3, 2019, Ms. Joslin directed Petitioner to take a drug test. (*Id.*, PageID.666.) Petitioner refused, stating that "he was not going to urinate in the bathroom with another man standing there." (*Id.*) Ms. Joslin testified that Petitioner had a "very poor" attitude and was "very argumentative." (*Id.*, PageID.667.) Ms. Joslin noted that Petitioner "blamed us, essentially, for the situation that he was in." (*Id.*) Petitioner also admitted that he had not read his conditions of probation because "it was all setting him up to fail, that he couldn't abide by the conditions, and he was just being set up to fail." (*Id.*) Ms. Joslin also noted that Petitioner failed to provide information regarding an adequate residence and that he "was trying to give [her] an address of a place that he admitted he was not going to live at." (*Id.*, PageID.674.)

Petitioner called Lewis Corwin, the individual responsible for drug testing at the probation office, to testify on his behalf. (*Id.*, PageID.677.) Mr. Corwin testified that he came into contact with Petitioner on December 3, 2019, to collect a sample for drug testing. (*Id.*) He was not able to complete testing because Petitioner told Mr. Corwin that he "couldn't pee in front of [him]." (*Id.*, PageID.678.) Mr. Corwin testified that Petitioner "was in [the testing area] two or three times." (*Id.*) On the last time, Petitioner "said that he couldn't produce a sample because [Mr. Corwin] was staring at him." (*Id.*) Mr. Corwin could not remember if he suggested that Petitioner drink some water. (*Id.*) Mr. Corwin noted that Petitioner was "rude" and "had an attitude about him." (*Id.*) He said that it was possible that he turned on the water faucet to help, but that it did not work in Petitioner's case. (*Id.*)

Petitioner also testified on his behalf. (*Id.*, PageID.683.) He testified that he did not read his probation conditions because he did not have access to them until he was released. (*Id.*,

PageID.684.) Petitioner explained that he did not produce a urine sample because he "couldn't urinate with somebody behind [him]." (*Id.*, PageID.688.) Petitioner testified that he did drink water to help, but to no avail. (*Id.*, PageID.689.) Petitioner also testified that he was unable to give Ms. Joslin an address because he did not know where he was going to stay. (*Id.*, PageID.691.) He denied being hostile during his time at the probation office on December 3, 2019. (*Id.*)

Ultimately, the trial court found Petitioner guilty of violating his probation. The trial court first noted that Petitioner failed to comply with drug testing requirements on December 3, 2019, and that Petitioner's "story about he cannot provide a sample" did not matter. (*Id.*, PageID.711.) The trial court found Petitioner not guilty of failing to report given that "his orders, and our written requirements, are that he is to report by the next business day," and Petitioner "in fact, did that." (*Id.*, PageID.712.) The court noted that Petitioner had been given an oral order to report on the same day that he was released from jail, but indicated that "the Court does speak through its written orders." (*Id.*) Finally, the trial court found Petitioner guilty of failing to provide an adequate residence. (*Id.*) As noted above, the Court sentenced Petitioner to 14 months to 5 years of incarceration, with credit for 256 days of time served. (*Id.*, PageID.725.)

Petitioner, through counsel, filed a delayed application for leave to appeal to the Michigan Court of Appeals, arguing that: (1) the trial court abused its discretion by sentencing Petitioner to a minimum term of 14 months when the minimum guidelines range was 0–11 months; (2) the trial court lacked preponderance of the evidence to find Petitioner guilty of violating his probation; and (3) the sentence imposed was not proportionate. (ECF No. 14-14, PageID.812.) The court of appeals denied Petitioner's delayed application for leave to appeal "for lack of merit in the grounds presented" on September 16, 2020. (*Id.*, PageID.809.) The Michigan Supreme Court denied Petitioner's *pro per* application for leave to appeal on February 2, 2021. (ECF No. 14-15,

PageID.1571.) Petitioner then filed a § 2254 petition in the Eastern District of Michigan, which was dismissed without prejudice for failure to exhaust on June 28, 2021. *See Price v. Michigan*, No. 21-11285, 2021 WL 2646080, at *1 (E.D. Mich. June 28, 2021).

On or about April 25, 2022, Petitioner filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500, arguing: (1) ineffective assistance of trial and appellate counsel; (2) malicious prosecution and prosecutorial vindictiveness; (3) violations of his due process rights; and (4) that an evidentiary hearing was required to correct his presentence investigation report. (ECF No. 14-9.) The trial court denied Petitioner's rule 6.500 motion in an order entered on August 8, 2022. (ECF No. 14-10.) The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal on July 5, 2023. (ECF No. 14-13, PageID.957.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court on August 16, 2023. (ECF No. 14-16.) While that application was pending, Petitioner filed a "motion to stay [and] abey[]," as well as a copy of his Rule 6.500 motion, in the United States District Court for the Eastern District of Michigan. *See Price v. Rewerts*, No. 1:23-cv-1302 (W.D. Mich.) (ECF Nos 1, 3). That court transferred the action to this Court for further proceedings. *See* Op. and Order, *id.* (ECF No. 5). This Court directed Petitioner to file an amended habeas petition, noting that it was premature to say anything regarding the propriety of Petitioner's request for a stay. *See* Order, *id.* (ECF No. 9). Petitioner filed his amended habeas petition on January 10, 2024. *See* Am. Pet., *id.* (ECF No. 11). In an opinion, order, and judgment entered on January 26, 2024, Magistrate Judge Green dismissed that petition without prejudice for failure to exhaust state court remedies and denied a certificate of appealability. *See* Op., Order, and J., *id.* (ECF Nos. 13, 14, 15).

Four days later, on January 30, 2024, the Michigan Supreme Court denied Petitioner's *pro per* application for leave to appeal the court of appeals' July 5, 2023, order. (ECF No. 14-16, PageID.1716.) The instant § 2254 petition followed.

On June 10, 2024, Petitioner filed a change of address notification, indicating that he had been released from custody. (ECF No. 10.) Petitioner filed another address change on July 26, 2024. (ECF No. 12.) Respondent filed a response and the state court record (ECF Nos. 13, 14) on September 10, 2024. As noted above, on October 24, 2024, the Court entered an order (ECF No. 15) noting that Petitioner was no longer in custody on the probation violation sentence and had been discharged from custody. The Court, therefore, directed the parties to file briefs within 14 days addressing the collateral consequences, if any, Petitioner continues to suffer as a result of the revocation of his probation. The parties filed their briefs on November 16, 2024. (ECF Nos. 17, 18.)

## II.   Mootness

In the context of parole revocations, the Supreme Court has held that, without proof of ongoing collateral consequences stemming from that revocation, an unconditional release from custody moots a defendant's challenge to the allegedly erroneous revocation. *See Spencer v. Kemna*, 523 U.S. 1, 8–16 (1998). *Spencer* "is not limited to the parole context, but applies with equal force in the probation context." *See United States v. Kissinger*, 309 F.3d 179, 181–82 (3d Cir. 2002).

In light of the fact that Petitioner is no longer in custody on the probation violation sentence and has been discharged from supervision, Petitioner is no longer "in custody" for purposes of § 2254. Petitioner's challenges to the revocation of his probation are moot unless Petitioner can "show[] that he 'is suffering, and will continue to suffer, serious disabilities'—collateral

consequences—as a result of the [revocation]." *Pola v. United States*, 778 F.3d 525, 530 (6th Cir. 2015) (quoting *Carafas v. LaVallee*, 391 U.S. 234, 238–39 (1968)); *see also Prowell v. Hemingway*, 37 F. App'x 768, 769–70 (6th Cir. 2002) (federal prisoner's § 2241 petition for writ of habeas corpus which challenged his parole revocation was rendered moot by petitioner's release upon completion of his sentence absent a showing of actual collateral consequences); *Pokladek v. Burton*, No. 2:14-cv-13602, 2016 WL 393167, at *2 (E.D. Mich. Feb. 2, 2016) (state prisoner's § 2254 petition rendered moot by petitioner's release from his probation revocation sentence absent a showing of actual collateral consequences).

Examples of collateral consequences include facing removal or deportation, experiencing limitations on the right to engage in certain businesses, being barred from serving as an official in a labor union, not being able to vote, and the use of convictions to impeach at any future criminal trials. *See Pola*, 778 F.3d at 530 & n.2. Petitioner does not mention any of those consequences in his brief. Instead, Petitioner avers that he has suffered from the loss of a job, social stigma, loss of benefits such as certain housing and welfare benefits, a "loss of constitutional rights," and "defying my image as conduct disorder." (ECF No. 18, PageID.1868.) Petitioner also mentions that he was denied adequate medical care for various medical conditions during his incarceration. (*Id.*, PageID.1868-1870.)

While the Court does not discount Petitioner's arguments, they do not rise to the level of the collateral consequences contemplated by *Pola*. First, to the extent Petitioner avers that he received inadequate medical care while incarcerated on the probation revocation sentence, he may file a civil rights suit pursuant to 42 U.S.C. § 1983 to pursue those claims. Essentially, Petitioner is arguing that the revocation of his probation "is unjustly interfering with [his] efforts to rebuild [his] life." *United States v. Pinto*, 1 F.3d 1069, 1070 (10th Cir. 1993). However, the harms alleged

7

by Petitioner, such as the loss of a job, social stigma, and being ineligible for certain social benefits "are not unusual or unwarranted. Instead, they are the natural . . . collateral consequences of having been convicted." *United States v. Smith*, 940 F.2d 395, 396 (9th Cir. 1991).

In sum, Petitioner has been discharged from his probation revocation sentence and fails to demonstrate the existence of actual collateral consequences arising from the revocation. Thus, any injury Petitioner suffered as a result of the revocation cannot be redressed by a favorable decision from this Court. Petitioner's claims have therefore been rendered moot, and his § 2254 petition must be dismissed.[1] *See Diaz v. Kinkela*, 253 F.3d 241, 243–44 (6th Cir. 2001).

## III.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district

---

[1] The Court notes that as part of his third ground for relief, Petitioner refers to an "illusory plea." (§ 2254 Pet., ECF No. 1, PageID.8.) Petitioner, however, appears to base that assertion on his statement at his October 17, 2019, sentencing that he was being "set up for failure" by being placed on probation. (ECF No. 14-4, PageID.626.) The judge responded that probation would "be set up in a manner that we'll try to get you the assistance of the resources that we have available." (*Id.*)

Petitioner does not raise any argument suggesting that his guilty plea was entered unknowingly or involuntarily. Instead, he entered into the plea agreement despite his belief that he could not abide by probation. Petitioner only now takes issue with his plea after the revocation of his probation and his discharge from custody. In light of Petitioner's argument, the Court does not construe his § 2254 petition to assert a challenge to his underlying conviction. In any event, upon review of the record, particularly the transcript of the change of plea hearing, any challenge to the underlying plea lacks merit.

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*

The Court has concluded that Petitioner's § 2254 petition is moot. Under *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), when a § 2255 motion is denied on procedural grounds, a certificate of appealability may issue only "when the [movant] shows, at least [1] that jurists of reason would find it debatable whether the [motion] states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id.*

The Court finds that reasonable jurists could not find it debatable whether Petitioner's § 2254 petition should be denied as moot because Petitioner has not demonstrated that he is suffering collateral consequences as a result of the prior revocation of his probation. Accordingly, a certificate of appealability will be denied. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment denying the petition as moot, as well as an order denying a certificate of appealability.

Dated: November 15, 2024            /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    United States District Judge